```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF INDIANA
                        INDIANAPOLIS DIVISION
```

VENUS COLLIER, on behalf of K.L.C., a     )
minor,                                    )
      Plaintiff,                       )
                                         )       1:09-cv-0066-LJM-TAB
      vs.                              )
                                         )
MICHAEL J. ASTRUE, Commissioner of        )
the Social Security Administration,       )
      Defendant.

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Venus Collier ("Collier"), on behalf of K.L.C. ("K.L.C."), a minor, requests judicial review of the final decision of Defendant, Michael J. Astrue, Commissioner of the Social Security Administration (the "Commissioner"), who found that KLC was not entitled to Supplemental Security Income ("SSI") child's benefits. The Court rules as follows.

## I. BACKGROUND

K.L.C. was born on July 15, 1998. R at 45. She was nine years old at the time of Administrative Law Judge Stephen E. Davis' (the "ALJ") decision. R. at 26, 45. Collier claims K.L.C. became disabled on June 6, 1999, due to asthma. R. at 45, 51-57.

K.L.C. was first diagnosed with asthma in 1999. R. at 18. She was hospitalized for asthma exacerbation in October 2001, from June 11 to June 13, 2003, and from July 10 to July 14, 2003. R. at 105-08. On August 26, 2004, K.L.C. went to Riley Hospital's emergency room in severe respiratory distress. R. at 104. K.L.C.'s condition required continuous nebulizers, intravenous Decadron, and one dose of both asithromycin and

cefuroxime. *Id.* K.L.C.'s respiratory status gradually improved and she was given Atrovent every eight hours. *Id.* She was discharged on August 29, 2004, with instructions to take Advair and Singulair and was advised to continue taking oral steroids for the next seven days. *Id.*

In October 2004, K.L.C.'s kindergarten teacher completed a disability determination questionnaire (the "Questionnaire"). R. at 60-67. The Questionnaire indicates that K.L.C. had difficulty acquiring and using information, but did not have any difficulties attending and completing tasks, interacting and relating with others, moving about and manipulating objects, or caring for herself. *Id.* In October 2004, a state agency physician, G. Wilson, M.D. ("Dr. Wilson"), reviewed the medical evidence of record and determined that K.L.C. had severe asthma that did not meet, medically equal, or functionally equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (individually, a "Listing"). R. at 134-35. His notes indicated that K.L.C. had been hospitalized once in the last year and that her lungs were clear during a follow-up examination after that hospitalization. R. at 138. His notes also indicated that K.L.C.'s oral steroid use did not cause her to meet or equal a listing. *Id.*

In March 2005, a state agency physician, S. Roush, M.D. ("Dr. Roush"), reviewed the medical evidence of record. R. at 94-99. Dr. Roush also determined that K.L.C. had severe asthma that did not meet, medically equal, or functionally equal a Listing. *Id.*

In April 2005, Veda Ackerman, M.D. ("Dr. Ackerman"), a pediatric pulmonologist at the Riley Hospital Pediatric Pulmonary Clinic, examined K.L.C.. R. at 173. Dr. Ackerman reported that K.L.C.'s lungs were clear, and she showed no signs of wheezing. *Id.*

However, K.L.C. had decreased pulmonary function, and her Advair dosage was increased. *Id.* Dr. Ackerman also prescribed K.L.C. Zyrtec. *Id.*

On July 22, 2005, K.L.C. and Collier attended a follow-up appointment with Wynton Hoover, M.D. ("Dr. Hoover"), a pediatric pulmonologist. R. at 163. Collier told Dr. Hoover that K.L.C. had slept better since being prescribed Advair. *Id.* Collier also reported that K.L.C. experienced fewer episodes of coughing after physical exertion. *Id.* When she did cough after physical exertion, K.L.C.'s cough did not produce sputum. *Id.* Collier described K.L.C.'s activity tolerance as good. *Id.* Dr. Hoover noted that K.L.C. appeared well and in no apparent distress. *Id.* She did not have focal wheezes and her chest was clear. *Id.* Her pulmonary function test score improved. *Id.* Dr. Hoover opined that K.L.C. had severe persistent asthma, but noted that her condition was under good control with a moderately high dosage of inhaled corticosteroids as well as Albuterol on an as-needed basis. *Id.*

In October 2005, Dr. Fox opined that K.L.C. has moderate to severe asthma. R. at 179. Dr. Fox noted that it had been over a year since K.L.C. was hospitalized, and his examination revealed that K.L.C. was doing well, but still wheezes when she runs a lot. *Id.* At the time, K.L.C.'s medications included Advair, Flonase, and Loratadine. *Id.*

K.L.C. did not seek treatment for her asthma until March 18, 2006, when she went to the emergency room after a wheezing episode the previous day. R. at 160-62. At the time of her examination, K.L.C. reported that she was feeling better. R. at 161. Her lungs were clear and there was no evidence of wheezing or cackles. R. at 162. The emergency room physician noted that K.L.C. has asthma and also diagnosed K.L.C. with an upper respiratory infection. *Id.*

In May 2006, K.L.C. was examined by Dianna Fox, M.D. ("Dr. Fox"). Tr. at 176. K.L.C. complained of a constant cough due to the change in the weather. *Id.* However, she did not report any wheezing or chest tightness. *Id.* Collier reported that K.L.C. was doing well in school. *Id.* K.L.C. was otherwise asymptomatic. *Id.*

On November 3, 2006, Dr. Ackerman reported that K.L.C. experienced an increase of asthmatic symptoms after switching from Advair to Flovent. Tr. at 155. K.L.C. complained of nighttime coughing and nasal congestion. *Id.* Running exacerbated her symptoms. *Id.* Dr. Ackerman's physical examination found K.L.C. to be alert and interactive. *Id.* K.L.C. did not present with wheezing or cackles, and her chest exam was clear. *Id.* Dr. Ackerman opined that K.L.C.'s asthma was under suboptimal control, but noted that she had normal pulmonary functioning. *Id.* Dr. Ackerman prescribed Flonase and resumed K.L.C.'s Advair prescription. *Id.*

On November 21, 2006, Dr. Fox reported that K.L.C. was back on Advair, which helped relieve her symptoms. Tr. at 175. Dr. Fox opined that K.L.C. had "moderate persistent [a]sthma that [i]s under good control with current regimen." *Id.*

On August 31, 2004, Collier protectively applied for SSI child's benefits on behalf of K.L.C.. R. at 26, 45-47. Collier stated that K.L.C. had been disabled since June 6, 1999. R. at 45, 51-57. After her applications were denied initially and on reconsideration, she requested an ALJ hearing. R. at 39E-M; R. at 186-203. On April 23, 2007, Collier and K.L.C. appeared with counsel at an administrative hearing before the ALJ. R. at 186-203.

At the administrative hearing, Collier testified that K.L.C. was in regular classes and did fairly well in school. R. at 191-92. K.L.C. received Albuterol through a machine in the mornings, which took about ten minutes. R. at 192. K.L.C. recently switched schools and

Collier asked her teachers to excuse K.L.C. from vigorous exercise. R. at 193. Strenuous exercise caused K.L.C. to wheeze, but "she knows when it[ is] time for her to slow down." R. at 194. Collier recalled K.L.C.'s visit to the emergency room in August or September 2006, when K.L.C. had an asthma attack due to cold air exposure. R. at 194-95. Collier testified that she had another daughter who had more energy than K.L.C.. R. at 196-97. K.L.C. received some tutoring in school, as she had quite a few "D's" or "C's," though Collier did not contribute K.L.C.'s school performance to her asthma. R. at 197-98. Collier testified that changes in the weather, pollen, and dust exacerbated K.L.C.'s symptoms. R. at 199. As a result, Collier tries to prevent K.L.C. from being exposed to dusty situations. *Id.* Collier testified that K.L.C. coughs every morning. *Id.*

K.L.C.'s attorney also reviewed K.L.C.'s prescriptions with the ALJ. R. at 201-02. He stated that K.L.C. currently took Albuterol, a bronchial dilator; Advair, a bronchial dilator combined with a cortical steroid; and Flovent, a cortical steroid. R. at 201. Collier told the ALJ that the only time K.L.C. took Prednisone and Zyrtec was during her stay at the hospital. R. at 202. Based on K.L.C.'s asthma and her history of prescribed steroid use, K.L.C.'s attorney argued that K.L.C. met or equaled Listing 103.03C2. R. at 200-01.

On August 21, 2007, the ALJ decided that K.L.C. was not disabled. R. at 12-26. On November 24, 2008, the ALJ's decision became the Commissioner's final decision, when the Appeals Council denied K.L.C.'s request for review. R. at 5-7. Pursuant to 42 U.S.C. § 405(g), Collier filed this civil action on behalf of K.L.C. for judicial review of the Commissioner's final decision.

## II. **DISABILITY AND STANDARD OF REVIEW**

An individual under the age of eighteen (a "child") is disabled if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). To satisfy this standard, a child must show that (1) she is not engaged in performing substantial gainful activity; (2) she has a severe medically determinable impairment; and (3) her impairments meet, medically equal, or functionally equal a Listing. 20 C.F.R. § 416.924(a)-(d). At the third step of this evaluation, if a child's impairment does not meet or medically equal any Listing, the ALJ must determine whether the child's impairment functionally equals a Listing by considering how the child functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting with and relating to other people; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b). "To find an impairment functionally equivalent to a [L]isting, an ALJ must . . . find an 'extreme' limitation in one category or a 'marked' limitation in two categories." *Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003) (citing 20 C.F.R. § 416.926a(a)).

The Social Security Act, specifically 42 U.S.C. §405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become findings of the Commissioner. *See, e.g.*, *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). In reviewing the ALJ's findings, the Court may not

decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* While a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz*, 55 F.3d at 307. An ALJ's articulation of his analysis "aids [the Court] in [its] review of whether the ALJ's decision was supported by substantial evidence." *Scott v. Heckler*, 768 F.2d 172, 179 (7th Cir. 1985).

### III. DISCUSSION

#### A. THE ALJ's FINDINGS

The ALJ first noted that K.L.C. was a school-age child on the date Collier filed her application for SSI child's benefits and that K.L.C. was still a school-age child on the date of the ALJ's decision. R. at 18. At the first step of the disability analysis, the ALJ found that there was no evidence K.L.C. engaged in substantial gainful activity at any time relevant to the ALJ's decision. *Id.* Next, the ALJ determined that K.L.C. had a severe impairment,

asthma. *Id.* At the third step of the disability analysis, the ALJ found that the record failed to establish the existence of an impairment or combination of impairments that meets, medically equaled, or functionally equaleda Listing. R. at 20-25. Accordingly, the ALJ found that K.L.C. was not disabled on or after the date Collier filed her application for SSI child's benefits.

### B. K.L.C.'S ARGUMENTS ON APPEAL

K.L.C. essentially makes three arguments on appeal, and the Court considers each in turn. First, K.L.C. argues that the ALJ's step-three, medical equivalency analysis is not supported by substantial evidence. Next, K.L.C. asserts that the ALJ erred by failing to secure an updated medical expert opinion regarding whether K.L.C. met or medically equaled Listings 103.03C2 and 103.03B. Lastly, K.L.C. argues that the ALJ's step-three, functional equivalency decision is not supported by substantial evidence.

As to her first argument, K.L.C. asserts that the ALJ failed to properly articulate his analysis of K.L.C.'s condition under Listings 103.03C2 and 103.03B. Although the ALJ did not mention Listing 103.03C2 in his written decision, it is clear from his decision that he contemplated that Listing. R. at 19-20. Specifically, the ALJ noted that the record evidence failed to demonstrate "persistent low grade wheezing between acute attacks or demonstrate a lack of extended symptom[] free periods." R. at 19. The ALJ also noted that K.L.C. "does [not] undergo short courses of corticosteroids that average more than 5 days per month for at least 3 months per year." R. at 20. These were precisely the findings the ALJ was required to make under Listing 103.03C2. His failure to specifically cite that Listing, without more, does not require remand. *Cf. Ribaudo v. Barnhart*, 458 F.3d 580,

583 (7th Cir. 2006) ("[A]n ALJ should mention the specific listings he is considering and his failure to do so, if combined with a perfunctory analysis, may require a remand.") (internal quotation marks omitted).

What is more troubling is the ALJ's failure to discuss K.L.C.'s medications as they apply to that Listing.  However, the Court need not remand this case if the ALJ's error in this regard is harmless.  *Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003).  To meet or medically equal Listing 103.03C2, a claimant must undergo "[s]hort courses of corticosteroids that average more than [five] days per month for at least [three] months during a [twelve]-month period[.]" Listing 103.03C2.  Although K.L.C. uses a corticosteroid inhaler on a daily basis (R. at 163), this is not the type of "[s]hort course[] of corticosteroids" contemplated by this Listing.  *Sanchez ex rel. Sanchez v. Barnhart*, No. 1:03-C-537-C, 2005 WL 752220 at *9 (W.D. Wis. March 30, 2005), affirmed *Sanchez v. Barnhart*, 467 F.3d 1081 (7th Cir. 2006).  Rather, Listing 103.03C2 requires the claimant to demonstrate use of "long-term control medications . . . [, namely] oral and intravenous corticosteroids, such as prednisone and methylprednisolone, [which] are used to treat acute asthma attacks or severe persistent asthma."  *Id.*  As K.L.C. notes, "[s]he was seen in the ER in August [2004] and put on oral steroids[.]" R. at 155.  Although this is the type of medication contemplated by Listing 103.03C2, the record does not reflect use for three months during a twelve-month period, which is necessary to satisfy that Listing.  Accordingly, the ALJ's error in failing to discuss K.L.C.'s medications as they apply to Listing 103.03C2 is harmless.  *Keys*, 347 F.3d at 994-95.

The ALJ also neglected to cite Listing 103.03B in his written decision, but once again it is clear from his decision that he contemplated that Listing.  R. at 19-20.  Specifically, the

9

ALJ noted that the record evidence failed to establish "attacks in spite of prescribed treatment requiring physician intervention, occurring at least once every two months, or at least six times per year[.]" *Id.* These are the findings the ALJ was required to make under Listing 103.03B; thus, his failure to specifically mention that Listing, without more, does not require remand. *Cf. Ribaudo*, 458 F.3d at 583.

Further, in his written decision, the ALJ discussed in detail the history of K.L.C.'s struggle with asthma. R. at 18-19. In this case, because Collier filed K.L.C.'s protective application for SSI child's benefits in August 2004, the relevant time period to consider K.L.C.'s history of asthma attacks is after August 1, 2004, until the date of the ALJ's decision. *See Browning v. Astrue*, No. 2:06-cv-436, 2008 WL 835702 at *7 (N.D. Ind. March 24, 2008) (finding, for purposes of SSI, that the relevant time period to consider a claimant's condition starts at the beginning of the month during which the claimant filed for SSI benefits); 20 C.F.R. § 416.335. In short, as the ALJ correctly noted, the record evidence of K.L.C.'s struggle with asthma fails to establish asthma attacks requiring physician intervention, occurring at least six times per year during any twelve-month period following August 1, 2004. Listing 103.03B. K.L.C. points to a four-day hospitalization for asthma exacerbation in August 2004 (which counts as two attacks under Listing 103.03B) and an emergency room visit in March 2006 (which may not even count as an asthma "attack" under Listing 3.00C). R. at 104, 121, 160. This falls short of the frequency of asthma attacks required to meet or medically equal Listing 103.03B. Accordingly, substantial evidence supports the ALJ's finding under that Listing. *Nelson*, 131 F.3d at 1234.

Second, K.L.C. asserts that the ALJ erred by failing to obtain an updated medical expert opinion regarding whether K.L.C. medically equaled Listings 103.03C2 and 103.03B. In this case, two state agency physicians, whose opinions the ALJ is entitled to rely upon, opined that K.L.C. did not meet or medically equal Listings 103.03C2 and 103.03B. R. at 95-99, 134-35; *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). Accordingly, the ALJ was not required to obtain an updated medical expert opinion unless K.L.C. presented additional evidence that might change the state agency physicians' opinions. Social Security Rule ("SSR") 96-6p.

K.L.C. does not cite to any record evidence or additional medical evidence upon which a medical expert might rely to come to a different conclusion than that of the state agency physicians. Specifically, K.L.C. does not direct the Court to any record evidence or additional medial evidence demonstrating that although K.L.C. does not meet all of the requirements of Listings 103.03C2 and 103.03B, she experiences other symptoms of equal severity or significance. 20 C.F.R. § 416.926(a).

K.L.C. cites only to a colloquy at her hearing between her counsel and the ALJ, during which some confusion was displayed regarding whether K.L.C.'s medications met or medically equaled Listing 103.03C2. R. at 200-203. However, there was no confusion over which medications K.L.C. took during the relevant period[1], and as the Court noted above, K.L.C.'s use of inhaled steroids does not fall within the treatment contemplated by Listing 103.03C2. *Sanchez ex rel. Sanchez*, 2005 WL 752220 at *9. Accordingly, because K.L.C. has not identified any record evidence or additional medical evidence upon which

---

[1] In fact, Collier testified that the only time K.L.C. took Prednisone was during her 2004 stay in the hospital. R. at 202.

11

a new medical expert might rely to come to a different conclusion than that of the state agency physicians, the Court concludes that the ALJ did not err by failing to secure additional expert medical testimony on the issue of medial equivalency.  SSR 96-6p.

Lastly, K.L.C. asserts that the ALJ's step-three decision is not supported by substantial evidence.  Specifically, K.L.C. asserts that the ALJ failed to properly articulate his functional equivalency analysis in his written decision. 20 C.F.R. § 416.926a(b).  Again, the Court disagrees.  The ALJ evaluated K.L.C.'s impairment under each of the six domains specified by 20 C.F.R. § 416.926a(b) and discussed the record evidence in support of his findings.  R. at 21-25.  K.L.C. does not direct the Court to any record evidence that demonstrates a "marked" or "extreme" limitation in any of the six domains.  On its own examination, the Court notes that the October 2004 Questionnaire indicates that K.L.C. had some difficulty acquiring and using information.  R. at 61.  While it would have been ideal for the ALJ to discuss this "favorable" evidence, this is hardly a case where the ALJ completely failed to explain why he gave no weight to record evidence that supports a disability finding.  *Cf. Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007).  Rather, this is a case where the claimant seems to be without relevant record evidence to support her claim.  In any event, the ALJ's failure to discuss the Questionnaire is harmless, because even if the Questionnaire by itself were sufficient to establish a "marked" limitation in the first domain,  K.L.C. would still be required to demonstrate a "marked" limitation in another domain.  *Brindisi*, 315 F.3d at 785; *Keys*, 347 F.3d at 994-95.  This she failed to do.

## IV. CONCLUSION

For the foregoing reasons, the final decision of the Commissioner of Social Security in this case is **AFFIRMED**.  Final judgment shall be entered accordingly.

IT IS SO ORDERED this 1st day of February, 2010.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov